UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 11-05-GWU


AMMIE BURTON,                                                PLAINTIFF,


VS.                           **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.


### INTRODUCTION

Ammie Burton brought this action to obtain judicial review of an administrative denial decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

11-05  Ammie Burton

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

3

11-05  Ammie Burton

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

4

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Burton, a 33-year-old former hotel/motel housekeeper, cashier, pizza delivery person, cook, secretary, office assistant, and sewing machine operator with a high school education, suffered from "severe" impairments related to central disc protrusion at L5-S1, obesity, depression, and post-traumatic stress disorder.  (Tr. 14, 20).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 17).  Since the claimant was found to be able to return to her past relevant work as a hotel/motel housekeeper, she could not be considered totally disabled.  (Tr. 20-21).  In the

alternative, the ALJ also found that a significant number of other jobs remained available to Burton.  (Id.).

       In determining that Burton could return to her past relevant work as a hotel/motel housekeeper, the ALJ relied heavily upon the information provided by Vocational Expert Leah Salyers.  The hypothetical question presented to Salyers included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to perform repetitive pushing or pulling with the lower extremities; (2) an inability to ever climb ladders, ropes or scaffolds; (3) an inability to more than occasionally kneel, crouch, stoop or climb stairs; (4) a need to avoid concentrated exposure to vibration, fumes, odors, or gases; (5) a limitation to work that can be learned in one or two steps; (6) a need to avoid contact with the public and more than occasional contact with co-workers; and (7) a limitation to routine changes in the work environment.  (Tr. 52-53).  In response, the expert testified that the plaintiff's past work as a hotel/motel housekeeper could still be performed.  (Tr. 53).  Salyers also identified a significant number of other jobs which could still be done including product packager (85,000 national jobs), product grader/sorter/selector (85,000 national jobs), clerical worker (90,000 jobs), product inspector (80,000 jobs), and bench assembler (80,000 jobs). (Id.).  Therefore, assuming that the vocational factors considered by Salyers fairly characterized Burton's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

11-05  Ammie Burton

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. David Swan, a non-reviewing medical reviewer, opined that Burton would be limited to light level work, restricted from a full range by a limited ability to push or pull with the lower extremities, an inability to ever climb ladders, ropes or scaffolds, an inability to more than occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs, and a need to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  (Tr. 453-460).  The physical factors of the hypothetical question were essentially consistent with this opinion.[1]  Such treating and examining sources as the staff at the King's Daughter's Family Care Center (Tr. 233-319, 423-430, 467-478), the staff at King's Daughter's Medical Center (Tr. 320-354), Dr. Douglas Mottley (Tr. 402-410), Dr. James Powell (Tr. 431-432), Dr. Pramit Bhasin (Tr. 461-466, 479-482), and Dr. Bernard Clark (Tr. 492-494) did not report the existence of more severe physical restrictions than those found by the ALJ.  These reports provide substantial evidence to support the administrative decision.

---

[1]The ALJ omitted a restriction concerning occasional balancing from the hypothetical question.  However, the Dictionary of Occupational Titles (DOT) at DOT No. 323.687-014 indicates that balancing is not required in the job of hotel/motel housekeeper.  Therefore, any error in the omission of this factor would be harmless.

11-05  Ammie Burton

A January, 2008 MRI scan of the lumbar spine revealed a large central herniated nucleus pulposus at L5-S1 with marked anterior impression on the thecal sac with bilateral neural foraminal encroachment related to disc material.  (Tr. 482). In July of 2008, when Dr. Bernard saw this report, he indicated an urgent need for surgery.  (Tr. 494).  Burton asserts that these reports support her claim of being more physically impaired than found by the ALJ.  Dr. Swan, the medical reviewer upon whom the ALJ relied, saw the record in April of 2007 and did not see these reports.  (Tr. 460).  The reviewer would have relied upon an earlier MRI scan from November, 2006 which did not reveal the herniated disc or neural compression.  (Tr. 320).  However, the treatment note from Dr. Bernard's office states that "this note has not been signed and may be incomplete."  (Tr. 494).  More severe physical restrictions than those found by the ALJ were not assessed with regard to this additional information despite the indication of a possible deterioration in her condition.  The mere diagnosis of a condition does not prove its severity and its disabling effect must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Therefore, this report does not support Burton's disability claim.

Burton also alleges that the ALJ erred in evaluating her migraine headaches. The ALJ determined that these were not a "severe" impairment.  (Tr. 15).  Dr. Bhasin treated the plaintiff for this condition and diagnosed migraines without aura in August of 2007.  (Tr. 464).  She was said to be doing better with her headache complaints reduced to twice a week in November of 2007.  (Tr. 480).  Severe

8

headaches were said to be relieved by Maxalt. (Id.). Dr. Bhasin did not impose more severe physical restrictions than those found by the ALJ relating to the headaches. Therefore, ALJ properly found that this was not a "severe" impairment.

The ALJ also dealt properly with the evidence relating to Burton's mental condition. Psychologist Teri Caudill examined the plaintiff and opined that she suffered from posttraumatic stress disorder and a major depressive disorder with a history of psychotic features. (Tr. 369). Caudill opined that the claimant would have a "good" ability to understand and remember simple instructions and a "moderate" restriction in such areas as attending and following through on complex tasks, making judgments, interacting effectively with others, and responding to day-to-day work pressures. (Tr. 370). The mental limitations presented to Salyers were compatible with this opinion. Psychologists Christi Bruening (Tr. 375-376) and Stephen Scher (Tr. 434-435) reviewed the record and opined that Burton would have a "moderately" limited ability to carry out detailed instructions. The ALJ's findings were consistent with these opinions. The plaintiff's treating staff at Pathways did not identify the existence of more severe, specific mental limitations than those found by the ALJ. (Tr. 411-422, 483-491). The Pathways staff suggested that physical health issues were the main factor in limiting her functioning. (Tr. 488). Therefore, these reports support the administrative decision.

The ALJ discussed Burton's history of posttraumatic stress disorder and depression, and noted that it related to a history of domestic violence from a

11-05  Ammie Burton

boyfriend.  (Tr. 19, 210).  The ALJ went on to state that "she is remarried now and seems to have a healthy relationship."  (Tr. 19).  The plaintiff asserts that the ALJ is relying upon her own lay opinion rather than any evidence of record in making this determination.  The ALJ did cite recent treatment notes from Pathways which she believed focused on the plaintiff's pain as her main concern.  (Tr. 19, 483-491).  (Tr. 489).  The claimant rated her current symptoms relating to her marital relationship and family as only "mild" on a Diagnostic Screening Assessment Form.  (Tr. 488).  As previously noted, physical health problems were reported to be the primary limiting factor in Burton's ability to function.  (Id.).  Therefore, the court finds no error.

Burton argues that the ALJ erred in finding that the job of hotel/motel housekeeper constituted past relevant work.  The plaintiff notes that she held this position for no more than one month and it was performed on a part-time basis according to the information she supplied on the Disability Report.  (Tr. 126).  This one month time frame would not be enough time for her to have learned the job and for it to be considered substantial gainful activity as required by the administrative regulations at  20 C.F.R. § 404.1560(b)(1).  The court notes that DOT No.323.687-014 concerning the position of hotel/motel housekeeper indicates that no more than one month would be required to learn the job.  The administrative regulations provide that even part-time work can be considered substantial work activity and work one normally does for pay or profit would be considered gainful activity.  20

10

C.F.R. § 404.1572(a) and (b).  Thus, the claimant's past hotel/motel housekeeping work appears to meet the requirements to be considered past relevant work. Furthermore, the vocational expert cited a significant number of other jobs which could still be performed in addition to the past relevant work, making any error harmless.  (Tr. 53).  Therefore, the court must reject the plaintiff's argument.

Burton notes that Social Security Ruling (SSR) 02-1p indicates that an ALJ should assess the effects of obesity on the exertional, postural, and social functioning of a claimant as well as the ability to perform routine movement and physical activity.  While the ALJ in the current action found obesity to be a "severe" impairment and indicated that she considered it under the requirements of 02-1p (Tr. 16), the claimant asserts that the ALJ erred by failing to articulate the required analysis under the procedures outlined in the ruling.  However, the Sixth Circuit Court of Appeals has rejected the argument that SSR 02-1 outlines a particular procedure for evaluating obesity, stating that "it is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." Bledsoe v. Barnhart, 165 Fed. Appx. 408, 412 (6th Cir. 2006).  The court reported that the ruling "only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." Bledsoe, 165 Fed. Appx. at 412.  While Bledsoe was not a published decision, two later panels of the Sixth Circuit Court of Appeals have reiterated this finding concerning SSR 02-1.  See  Nejat v. Commissioner of Social Security, 359

Fed. Appx. 574 (6thCir. 2009) and Coldiron v. Commissioner of Social Security, 391 Fed. Appx. 435 (6th Cir. 2010).

In the present action, the ALJ made a finding of obesity and indicated that she was considering it in combination with other impairments but found that this did not lead to a disability finding.  (Tr. 14, 16).  The ALJ also considered the opinions of physicians of record, such as Dr. Powell, an examiner, and Dr. Swan, the medical reviewer, each of whom considered the issue of obesity.  (Tr. 19).  In Skarbak v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004), the Seventh Circuit Court of Appeals found no error when the ALJ even failed to mention obesity as long as the opinions of doctors who did consider the obesity question were factored indirectly into the ALJ's decision.  The Skarbak decision was cited with approval in Bledsoe, 165 Fed. Appx. at 412 and in Coldiron, 391 Fed. Appx. at 443.   The Third Circuit Court of Appeals made a rather different finding on this issue in Diaz v. Commissioner of Social Security, 577 F.3d 500 (3rd Cir. 2009), cited in support of her claim by the plaintiff, concluding that it was not sufficient for the ALJ to have merely referenced doctors who considered the question of obesity.  However, the Sixth Circuit Court of Appeals seems to prefer the Seventh Circuit's reasoning in Skarbak.[2]  Therefore, the undersigned must reject the claimant's argument.

_____

[2]As previously noted, the ALJ in the present action did specifically consider obesity, if perhaps not with the specificity desired by the claimant.

11-05  Ammie Burton

Another issue raised by Burton concerns the medical necessity of the cane she uses.  The ALJ determined that, based on the plaintiff's hearing testimony, she began using a cane found in storage and later asked her doctor for a replacement when it became worn out.  (Tr. 19, 48).  The ALJ stated that "there is no evidence that a doctor prescribed it for her."  (Tr. 19).  The claimant argues that this finding is erroneous because Dr. Bhasin, a treating source, prescribed the quad cane for her.  She asserts that the medical necessity of using the quad cane implies that she would not be able to perform the standing and walking indicated in the hypothetical question.  Since the ALJ did not properly reject this opinion of a treating source, this mistake constitutes reversible error.  However, a review of the prescription pad for the cane indicates that Sarah Ervin, a Physician's Assistant, prescribed the cane rather than Dr. Bhasin.  (Tr. 493).   Thus, a medical doctor did not prescribe the quad cane.   Under the federal regulations, a physician's assistant is not an "acceptable medical source" whose opinion would be binding on the ALJ.  20 C.F.R. § 404.1513.  Therefore, the court finds no error.

Burton argues that the ALJ did not properly evaluate her subjective complaints concerning her pain and other symptoms.  Complaints of pain and symptoms are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from

13

the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Burton was found to be suffering from a potentially painful condition.  However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  The ALJ noted that no current treating or examining sources had found tenderness, spasm, positive straight leg raising, and decreased strength or reflexes.  (Tr. 19).  In February of 2007, Dr. Mottley found no muscle spasm.  (Tr. 404, 406).  The doctor detected no true focal weakness.  (Tr. 404).  Seated straight leg raising was normal.  (Id.).  An EMG was normal.  (Tr. 405).  In April of 2007, Dr. Powell reported no focal tenderness in the back.  (Tr. 431).  Straight leg raising was negative.  (Id.).  Reflex or motor abnormalities were not reported except for give-way weakness.  (Tr. 432).  Dr. Bhasin found symmetric reflexes and a normal gait in August of 2007.  (Tr. 464).  A nerve conduction velocity study revealed no evidence of neuropathy.  (Tr. 19, 466).  The ALJ noted that Dr. Mottley reported exaggerated pain behaviors.  (Tr. 19, 405, 410).  Thus, the medical evidence is not sufficient to confirm the severity of the alleged pain and symptoms and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Burton's  pain complaints.

11-05  Ammie Burton

The undersigned concludes that the administrative decision should be affirmed.   Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 17th day of February, 2012.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**